IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KASEY A. ROBERTS,

        Plaintiff,

v.                                              CIVIL ACTION NO.   2:19-cv-00854

GESTAMP WEST VIRGINIA, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Motion for Partial Summary Judgment* (Document 31), *Defendant Gestamp West Virginia, LLC's Motion for Summary Judgment* (Document 33), the *Response to Defendant Gestamp West Virginia, LLC's Motion for Summary Judgment* (Document 35), *Defendant Gestamp West Virginia, LLC's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment* (Document 36), the *Reply Supporting Motion for Partial Summary Judgment* (Document 37), *Defendant Gestamp West Virginia, LLC's Reply in Support of Its Motion for Summary Judgment* (Document 38), and all attendant documentation. For the reasons stated herein, the Court finds that the Plaintiff's motion should be denied, and the Defendant's motion should be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case was originally filed in the Circuit Court of Kanawha County, West Virginia. On December 4, 2019, the case was removed to the United States District Court for the Southern District of West Virginia. The complaint alleges that the Plaintiff was wrongfully discharged

from his employment after missing work due to complications suffered as a result of an emergency appendectomy.

The Plaintiff received an emergency appendectomy on June 27, 2019. On that date, the Plaintiff messaged his supervisor via Facebook Messenger. Employees are generally required to report absences to a call-in line at least thirty minutes prior to the start of the shift. The Plaintiff was not penalized for failing to call into the hotline on that occasion because it was an emergency situation. On June 28, 2019, the Plaintiff provided the Defendant with a doctor's excuse stating that he could not return to work for two weeks.

On July 10, 2019, the Plaintiff developed an infection and was admitted to the hospital. On July 11, 2019, the Plaintiff's physician faxed a Family and Medical Leave Act certification to his employer, taking him off work for an indefinite period of time due to the infection. On August 1, 2019, the Plaintiff's physician released him to return to work on August 12, 2019. The Plaintiff personally delivered his work excuse to the Defendant on August 1, 2019.

The parties agree that the Plaintiff was on leave pursuant to the Family and Medical Leave Act from June 27, 2019 to August 12, 2019. The Plaintiff returned to work on August 12, 2019, and worked full shifts until August 16, 2019, when he left work due to immense pain in the area of his surgery. He informed his supervisor that he was leaving work because he did not feel well and received a work excuse for that absence on August 16, 2019.

The Plaintiff was scheduled to work again on August 19, 2019, but did not report to work due to the continuance of his severe pain. He informed his supervisor of the situation via Facebook Messenger, stating "Not going to make it in today. I'm in so much pain and when I went to the hospital Friday, I really never got an answer of why I'm in a lot of pain, but I do have

a work excuse for Friday." (Document 31-5 at 1.) The Plaintiff's supervisor did not respond to or acknowledge receipt of that message.

On August 20, 2019, the Plaintiff took an approved vacation day to visit his physician. During that visit, the Plaintiff was readmitted to the hospital because his physician believed that the infection had returned. That same day, the Plaintiff informed his supervisor through Facebook Messenger. The Plaintiff stated, "Hey," to which his supervisor responded, "What's up." (Document 31-5 at 1.) The Plaintiff then stated, "The doctor is admitting me back into the hospital. He thinks the infection is coming back. Have no idea how long I'll be in there." (*Id.*) The Plaintiff's supervisor likewise did not respond to or acknowledge the Plaintiff's messages sent on August 20, 2019.

The Plaintiff was scheduled to work August 21-23, 2019. However, the Plaintiff did not report to work on those dates and did not call the call-in hotline to report his absence. Instead, the Plaintiff relied on the Facebook message that he sent to his supervisor, Mr. Slater, on August 20, 2019. The Plaintiff was released from the hospital on August 23, 2019, but his physician did not release him to return to work until September 3, 2020. On previous occasions, the Plaintiff had dropped his doctor's excuse off at work immediately after receiving it. However, on this occasion, the Plaintiff did not provide the doctor's excuse during his absence. Thus, the Plaintiff was off work from August 26, 2019 through August 30, 2019, and did not contact his employer via the call-in line or provide a doctor's excuse. On August 28, 2019, the Defendant terminated the Plaintiff for "Job Abandonment" after not hearing anything from the Plaintiff for more than a week. The termination was effective as of August 21, 2019.

The Plaintiff 's doctor did not release him to return to work until September 3, 2019. On September 3, 2019, the Plaintiff reported to work, but learned that the Defendant had fired him for "Job Abandonment" because he had failed to report to work or advise the Defendant that he would be absent from work August 21-30, 2019. The Plaintiff indicated that he had a doctor's excuse. The HR Administrator asked the Plaintiff if he would like to speak with his supervisor, however, the Plaintiff declined and stated that he would clean out his locker and leave. The Plaintiff made no further attempt to get his job back.

Based on these allegations, the Plaintiff asserts claims for wrongful discharge and failure to accommodate in violation of the Americans with Disabilities Act (ADA) and West Virginia Human Rights Act. The Plaintiff also asserts claims for interference with rights and retaliation for exercising rights under the Family and Medical Leave Act (FMLA), and retaliatory discharge in contravention of substantial public policy of the State. The Plaintiff seeks compensatory damages, including lost wages and benefits; front pay; consequential damages; emotional distress and loss of dignity damages; annoyance and inconvenience damages; punitive damages; attorney fees and costs; interest and any further relief the Court deems appropriate.

On August 21, 2020, the Plaintiff filed a motion for partial summary judgment and the Defendant filed a motion for summary judgment. The Plaintiff and Defendant filed responses on September 4, 2020. The Plaintiff and Defendant further filed replies on September 11, 2020. The motions for summary judgment are, therefore, ripe for consideration.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of

5

credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

A. *Family and Medical Leave Act*

The Plaintiff asserts claims against the Defendant for interference with rights and retaliation for exercising rights under the FMLA. The Family and Medical Leave Act was enacted, in part, "to entitle employees to take reasonable leave for medical reasons . . ." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (quoting 29 U.S.C. §

6

2601(b)(1)-(2)). The FMLA was intended to be implemented "in a manner that accommodates the legitimate interests of employers." *Id.* (quoting 29 U.S.C. § 2601(b)(3)). However, "employees have an unfettered right to take FMLA leave because of a serious health condition intermittently when 'medically necessary,' with or without employer consent." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 293 (4th Cir. 2009) (citing 29 U.S.C. § 2612(a)(1)(C)-(D)).

The FMLA provides for several substantive, or prescriptive, rights. Employees have a right to take twelve weeks of leave during any twelve-month period for health-related matters, and also "have a right to be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* (quoting 29 U.S.C. §§ 2601(a)(1), 2614(a)(1)(A)-(B)). "Leave taken under the FMLA shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* (quoting 29 U.S.C. § 2614(a)(2)) (internal quotation marks omitted). "However, a restored employee is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* (quoting 29 U.S.C. § 2614(a)(3)(B)) (internal quotation marks omitted). "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any of these prescriptive rights. 29 U.S.C. § 2615(a)(1). The FMLA also contains "proscriptive provisions which protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko*, 446 F.3d at 546 (italics omitted).

Importantly, "an employer can avoid liability under the FMLA if it can prove that it 'would not have retained an employee had the employee not been on FMLA leave.'" *Id.* at 547 (quoting

*Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). "An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." *Id.*

"FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)." *Yashenko*, 446 F.3d at 550-51. To make a prima facie showing of a retaliation claim, an employee must demonstrate "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). After an employee establishes a prima facie case, if an employer proffers a non-discriminatory explanation for terminating the employee, then the burden shifts back to the employee to establish "that the employer's proffered explanation is pretext for FMLA retaliation." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).

When an employee requests leave, "it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Dotson*, 558 F.3d at 293 (quoting *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997)). When providing notice to an employer, "the employee need not use any magic words." *Id.* (quoting *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007)). Such notice must, however, provide "enough information to put the employer on notice that the employee may be in need of

8

FMLA leave." *Id.* (quoting *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999)).

An employee must provide notice within two days of their absence, or as soon as practicable. 29 C.F.R. § 825.303. An employer is expressly allowed to require employees "to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d); *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 609 (6th Cir. 2013). The applicable regulation outlines that requiring written notice or requiring employees to contact a specific individual qualify as examples of valid notice and procedural requirements that employers may require. 29 C.F.R. § 825.302(d). FMLA leave may be denied to employees who fail to follow an employer's usual notice and procedural requirements, unless unusual circumstances justify the employee's failure to comply. *Id.*

The primary issue in this case is whether the Plaintiff's failure to notify his employer of his August 21-30, 2019 absence through the approved call-in line violated the Defendant's usual and customary notice and procedural requirements for requesting leave. Whether the Plaintiff's notice was legally sufficient pursuant to FMLA requirements is a question of law. The Defendant's Attendance and Punctuality Policy states,

> If you are going to be absent or late for work for any reason, you must personally notify your Group Leader by using the call-in line as soon as possible but at least 30 minutes before the start of your shift. Asking another associate, friend, or relative to provide this notification is not acceptable, except in emergency situations. Any associate that fails to call in and/or come to work for three (3) consecutive days will be considered to have voluntarily abandoned his/her position.

(Document 31-8 at 30.) Moreover, the Defendant's policy specific to FMLA leave states, "The associate generally must comply with the company's normal call-in procedures. The company may delay or deny the taking of leave if the associate fails to properly notify it of the leave." Document 31-8 at 39.

The Defendant acknowledges that the Plaintiff was granted FMLA leave for the emergency appendectomy from June 27 to August 12, 2019. Therefore, only the period of absence relating to the Plaintiff's recurring infection is relevant to the claims at issue in this case. The facts relevant to the disposition of this case are undisputed. On August 19, 2019, the Plaintiff did not report to work, and he did not call in to the hotline. Instead, he messaged his supervisor, Mr. Slater, through Facebook stating that he was not going to make it in and was in a lot of pain. Mr. Slater never responded to that message or acknowledged its receipt. On August 20, 2019, the Plaintiff took an approved vacation day and messaged Mr. Slater stating, "Hey" to which Mr. Slater replied, "What's up." The Plaintiff then responded, "The doctor is admitting me back into the hospital. He thinks the infection is coming back. Have no idea how long I'll be in there." (Document 31-5 at 1.) Mr. Slater did not, however, respond to those messages or acknowledge their receipt.

The Plaintiff was scheduled to work August 21-23, 2019. However, the Plaintiff did not report to work on those dates and did not call the call-in hotline to report his absence. Instead, the Plaintiff relied on the Facebook message that he sent to Mr. Slater on August 20, 2019. The Plaintiff was released from the hospital on August 23, 2019, but his physician did not release him to return to work until September 3, 2020. On previous occasions, the Plaintiff had dropped his doctor's excuse off at work immediately after receiving it. However, on this occasion, the

Plaintiff did not provide the doctor's excuse during his absence. The Plaintiff was off work from August 26-30, 2019, without contacting his employer via the call-in line or providing a doctor's excuse. On August 28, 2019, the Defendant terminated the Plaintiff for "Job Abandonment" after not hearing anything from the Plaintiff for more than a week.

The Plaintiff argues that he notified the Defendant of his need for medical leave as soon as practicable under the circumstances. The Plaintiff further argues that usual and customary notice procedures can be modified by employer conduct. Specifically, the Plaintiff argues that messaging his Group Leader through Facebook was elevated to a usual and customary method of communicating with his employer about the need for medical leave. The Plaintiff asserts that he commonly communicated with his Group Leader via Facebook and, thereby, messaging through Facebook became the usual and customary method for communicating about absences. However, the case that the Plaintiff cites to support the assertion that employer conduct can modify usual and customary notice procedures does not support that proposition. *See Honeycutt v. Baltimore Cty., Md.*, No. Civ. JFM-060958, 2007 WL 1858691, at *5 (D. Md. June 18, 2007), *aff'd sub nom.*, *Honeycutt v. Baltimore Cty. Md.*, 278 F. App'x 292 (4th Cir. 2008). In *Honeycutt,* the central issue was whether the employer had willfully violated the FMLA. Although the court, in that case, briefly discussed the method the plaintiff was required to use to notify her employer of absences, it was discussed in the context of whether the required method constituted a willful violation as opposed to a modification of established notice procedures, as suggested here.

The record also does not support such a modification. Instead, the record demonstrates that the Plaintiff only communicated with his Group Leader about an illness-related absence through Facebook on one other occasion not related to the appendectomy and subsequent infection.

11

The record also demonstrates that the Plaintiff was previously disciplined for failing to report an absence through the call-in line. Throughout the Plaintiff's term of employment, he received numerous warnings for attendance violations. On April 23, 2019, the Plaintiff was issued a Final Attendance Violation for a "no call, no show." The Plaintiff was informed that the final violation meant that any further attendance points would result in his termination. Importantly, the Plaintiff was also issued a first warning for failure to call into the hotline on that same date. Thus, the Plaintiff was aware of the Defendant's policy and his obligation to use the call-in hotline for reporting future absences.

The Defendant's Attendance and Punctuality Policy clearly states that employees must report absences through the call-in line and that "[a]sking another associate . . . to provide this notification is not acceptable, except in emergency situations." (Document 31-8 at 30.) There are no facts alleged which constitute unusual circumstances or an emergency that would warrant the Plaintiff's failure to utilize the usual and customary notice and procedural requirements for the dates that the Plaintiff was absent following the recurrence of the infection. The Plaintiff acknowledged that he received a copy of the handbook that outlines the absence policy when he began working for the Defendant. Moreover, the Plaintiff acknowledged that he understood that the policy applied to him. The Plaintiff also acknowledged that he understood that failure to report an absence for three consecutive days would constitute job abandonment under the Defendant's policy and would result in termination.

Courts have routinely held that where an employee fails to comply with usual and customary notice requirements, FMLA claims fail. *See Peeples v. Coastal Office Products, Inc.*, 64 Fed.Appx. 860, 863-64 (4th Cir. 2003) (finding that employer was justified in terminating

12

employee who provided a note only stating that the plaintiff was "not yet ready to return to work," but provided no other information about when the plaintiff could resume work); *Perry v. Charleston Area Med. Ctr. Inc.*, No. 2:13-cv-13598, 2014 WL 2168859, at *1 (S.D. W. Va. May 22, 2014) (J., Goodwin) (denying an FMLA claim by a plaintiff who called in one hour before work, instead of two hours prior as required by her employer's usual and customary call-in procedures) (citing *Srouder v. Dana Light Axle Mfg.*, 725 F.3d 608, 615 (6th Cir. 2013) (finding that an employer was justified for terminating an employee . . . where the employee "produced no evidence demonstrating the type of 'unusual circumstance' that would have justified his failure to follow the call-in requirement); *Goff v. Singing River Health Sys.*, No. 1:13-cv-96-LG-JMR, 2014 WL 991724, at *5 (S.D. Miss. Mar. 13, 2014) ("Without any evidence to present to a jury regarding whether unusual circumstances existed that would excuse her failure to comply with [her employer's] call-in policy, [the plaintiff] cannot show a question of material fact on this issue.")).

Because the Plaintiff failed to notify the Defendant of his absence through the usual and customary notice and procedure requirements for requesting leave, and because no unusual circumstances justified the Plaintiff's failure to report his absence through the usual and customary notice and procedure requirements, the Defendant was entitled to deny FMLA leave to the Plaintiff. Therefore, the Plaintiff's FMLA claims must fail.

B. *Retaliatory Discharge in Violation of the Public Policy of the State*

The Plaintiff asserts that the Defendant's discharge was in retaliation for exercising his rights under the FMLA, in contravention of substantial public policy of the state. "The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial

public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." Syl. pt. 1, *Harless v. First Nat. Bank in Fairmont*, 246 S.E.2d 270, 271 (W. Va. 1978). The West Virginia Supreme Court has recognized that a claim for retaliatory discharge exists where an employee has been discriminated or retaliated against for taking leave in accordance with the FMLA. *Burke v. Wetzel County Commission*, 815 S.E.2d 520, 537 (W. Va. 2018). "The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that the cited provision clearly mandates." *Id.* Because the Court has determined that the Plaintiff's discharge was not in violation of the FMLA, the claim based on retaliatory discharge in contravention of the substantial public policy of the state must likewise fail.

    C. *Americans with Disabilities Act and West Virginia Human Rights Act*

As noted above, the Plaintiff has asserted claims against the Defendant for wrongful discharge and failure to accommodate under the ADA and the West Virginia Human Rights Act. To establish a prima facie case of wrongful discharge under the ADA, the plaintiff must demonstrate that: "(1) she was within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005). To establish a prima facie case for failure to accommodate, the plaintiff must demonstrate that: "(1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the position; and (4) the employer refused to make such accommodations." *Id.*

14

Under both circumstances, to qualify for the ADA's protections a plaintiff must demonstrate that they are disabled, within the meaning of the ADA. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001). A disability entails "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* (quoting 42 U.S.C. § 12102(2)(A)). To be substantially limited means, *inter alia*, "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Such major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (quoting 29 C.R.F. § 1630.2(i)).

To determine the degree to which an impairment is limiting, courts consider factors such as the "nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467-68 (4th Cir. 2002) (internal quotation marks omitted). The Fourth Circuit has held that "a temporary impairment, such as recuperation from surgery, will generally not qualify as a disability under the ADA. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Id.* at 468.

The Plaintiff in this case alleges that he was impaired from June 27, 2019 through September 3, 2019, due to his emergency appendectomy. However, the Plaintiff received appropriate leave related to the emergency appendectomy. Thus, the Plaintiff's claims for wrongful discharge and failure to accommodate relate only to the recurrence of the infection,

15

which lasted from August 16, 2019 to September 3, 2019, when he learned that he was terminated. Courts that have considered comparable levels of impairment have concluded that such limitations do not qualify for ADA protection. *See Pollard*, 281 F.3d at 469 (finding that an injury which led to a nine-month absence from work was insufficient to demonstrate that [the plaintiff] had a disability under the ADA); 29 C.F.R. § 1630.2(j)(1)(ii) (stating that "duration" is a factor to consider when determining whether a person is disabled).

The Plaintiff also failed to satisfy the administrative exhaustion requirements under the ADA. Plaintiffs must "exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court." *Thomas v. Salvation Army Southern Territory*, 841 F.3d 632, 638 (4th Cir. 2016). Moreover, administrative filing must occur within 180 days of the allegedly discriminatory act. 42 U.S.C. §§ 2000(e)-5(e)(1), 12117(a).

The Court finds that the Plaintiff was not disabled, within the meaning of the ADA, and that he failed to satisfy the administrative exhaustion requirements. Therefore, his claims under the ADA must fail.

In order to establish a claim under the West Virginia Human Rights Act (WVHRA), a plaintiff must establish that they are a member of a protected class. *See W. Virginia Univ. W. Virginia Bd. of Regents v. Decker*, 447 S.E.2d 259, 266 (W. Va. 1994); *Conway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 425 (W. Va. 1986). As relevant to this case, the WVHRA establishes that persons with disabilities are members of a protected class. W. Va. Code § 5-11-3. The WVHRA mirrors the ADA in its definition of the term "disability," and defines it as "[a] mental or physical impairment which substantially limits one or more of such person's major life

activities." *Id.* Because this Court has previously determined that the Plaintiff does not qualify as having a disability, the Plaintiff is similarly not a member of a protected class under the WVHRA, and the Plaintiff's claims under the WVHRA must also fail.

Given the Court's findings and conclusions herein, particularly those relative to the established notice procedure, the Plaintiff's *Motion for Partial Summary Judgment,* requesting liquidated damages pursuant to the FMLA, should, of course, be denied since the Plaintiff has failed to show a genuine dispute of material fact as to a violation.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the Plaintiff's *Motion for Partial Summary Judgment* (Document 31) be **DENIED** and that *Defendant Gestamp West Virginia, LLC's Motion for Summary Judgment* (Document 33) be **GRANTED**.

Accordingly, the Court **ORDERS** that this case be **DISMISSED** and **STRICKEN** from the docket and that all pending motions be **TERMINATED** as moot.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 19, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

17